# Raymond E. Hall v. State.

No. 24328.  April 13, 1949.

No attorney of record on appeal for appellant.

*Ernest S. Goens,* State's Attorney, Austin, for the state.

KRUEGER, Judge.

The offense is an assault with intent to murder without malice. The punishment assessed is confinement in the state penitentiary for a period of two years.

Appellant, in due time, filed a motion for a new trial based on the ground that the evidence was insufficient to sustain his conviction. The court overruled his motion to which he then and there excepted and gave notice of appeal to this court.

It was the state's theory, finding support in the evidence, that appellant and Allen Simpson, the owner of a beer tavern known as the Wagon Wheel, undertook to put E. M. Lee out of the place for some misconduct on his part; that in doing so appellant struck him with a blackjack on and about the head breaking his nose, his jawbone, and otherwise bruising his face. The injured party was carried to a hospital in an unconscious condition and remained in such condition for approximately 48 hours. He remained at the hospital under the care of a physician for about one week.

It was the defendant's contention that he undertook to eject E. M. Lee for misconduct while in the tavern on the night in question; that he picked up the chair in which Lee was sitting and started to the door with Lee sitting in the chair; that he fell and Lee bit him on the leg whereupon he slapped him with his open hand, that at this juncture, Simpson came to his aid and they succeeded in ejecting Lee. Appellant also introduced some evidence which tended to show that some person on the outside struck, beat and kicked Lee after he had been ejected. This, however, was controverted by witnesses for the state. It will be noted from a brief summary of the testimony that an issue of fact was raised which the jury decided adversely to him, and this court would not be authorized to disturb the jury's verdict.

Appellant brings forward ten bills of exception complaining of the admission and exclusion of evidence, two bills complain-

ing of argument by the assistant district attorney, and a great number of timely objections to the court's charge.

By Bill of Exception No. 2 appellant complains because the court permitted the state to prove by M. E. Lee, the injured party, that while appellant was in the act of carrying him out of the tavern Simpson, the owner of the tavern, came up and struck at him with his fist and made contact with him and from that time on he was out. Appellant objected to said testimony on the ground that any assault which Simpson may have made upon Lee under the circumstances would have no bearing on the issue in the trial of defendant, Hall, inasmuch as no concerted action between Hall and Simpson is shown. It appears from the record that Simpson and Hall were both indicted, each by a separate indictment, for the offense. There was some evidence from other sources that appellant struck Lee with a blackjack while Simpson struck him with his fist, both being present and both acting together with a common purpose and intent made the evidence admissible on the theory that they were principals.

By Bill of Exception No. 3 he complains because the court permitted Lee, the injured party, to testify that while appellant was carrying him, Lee, toward the door Simpson walked up, hit him with his fist and knocked him unconscious; that he regained consciousness two mornings later; that he was in the hospital for six days under the care of Dr. Kingsberry; that he, Lee, had a fractured skull, a broken nose, and a broken jawbone, to which appellant objected on the ground that what the X-ray disclosed was a matter of expert opinion; that the witness was not qualified to read and interpret X-rays; that it would be hearsay—something his doctor had told him. The objection was overruled and he excepted. As we understand the bill, Lee testified that he sustained a fracture of the skull, a broken nose and a broken jawbone. This, in our opinion, was admissible since he no doubt knew whether or not he had a broken nose and broken jawbone. However, Dr. Kingsberry gave, in substance, like testimony as that complained of, therefore no reversible error is shown.

Bill of Exception No. 4 reflects the following occurrence: After the prosecuting witness, Lee, had given his testimony in chief, appellant's counsel on cross examination attempted to lay a predicate to impeach Lee and while attempting to show that he, Lee had attempted bribery of a witness, the state objected to the question and answers sought to be elicited, and moved

the court to retire the jury which motion was sustained and then in the absence of the jury and out of their hearing, he proceeded to develop the following testimony by Lee, to-wit: "Luther Pringle is now working for me. I do not remember whether John Hay ever worked for me. I did not offer John Hays or Luther Pringle $50 each if they would come up here and testify against Simpson or Hall in this case. I have offered nobody anything. I don't know John Hays. I don't remember ever seeing him. Luther Pringle has not been subpoenaed. He has a son and I tried to subpoena him, and he has not shown up. Luther Pringle's boy came out to where I work to see his father, and he saw me and commenced telling me where I was hit and who did it, and I asked him to testify for me and he said 'Yes, and I will go and get another man to testify for you.' I told him I would be very glad if he did. He left but never came back. Then when this case was called, I had him subpoenaed. A day or two later he came back and said he did not know anything about the case * * *. I did not talk to John Hays and I did not offer him $50 to testify that Hall and then Simpson beat me up. About three years ago I cut a man with a knife. The grand jury did not indict me." At this juncture, the court declined to permit counsel to further inquire of the complaining witness relative to fights and people he had cut with a knife, and instructed defense counsel not to interrogate the witness about any of these transactions in the presence and hearing of the jury, to which ruling of the court appellant excepted. John Hays was then called and he testified in substance as follows: "I have seen E. M. Lee since this affair happened at the Wagon Wheel. He talked to me about being a witness in his behalf. He told me that if I saw Allen Simpson hit him in the Wagon Wheel, he would pay us off; that is me and Pringle. He said he would pay me around $50. I told Lee I was not there when it happened. He said he wanted me to testify that I saw Simpson hit him, but I refused to do so." Thereupon, appellant called Luther Pringle who testified in substance that he was a son of John Luther Pringle who works at A. J. Lee's with E. M. Lee; that he did not see any disturbance at the Wagon Wheel on December 14, 1947, but heard a few talking about it after it happened. Lee, the injured party, asked him if he would swear that Allen Simpson hit him in the face with his fist. "I told him I did not see it. I was subpoenaed by telephone to come up for $50 for Raymond E. Hall. I told them I did not know anything about it." The foregoing is, in substance, all that is disclosed by the bill. The record shows that appellant called John Hays and Luther Pringle, placed them on the witness stand, and they

testified before the jury in substance as disclosed by the bill. However, the witness, John Hays, on cross examination, found himself in a position to refuse to answer some of the questions propounded to him by state's counsel, which in our opinion didn't make a favorable impression on the jury. We fail to see how or in what way appellant was hurt by the ruling of the court since he was permitted to introduce the testimony before the jury for which he sought to lay a predicate. What difference did it make whether or not he laid any predicate for impeachment of the prosecuting witness, since he was permitted to introduce the very testimony he desired to get before the jury.

Bill of Exception No. 5 reflects the following occurrence: Dr. Kingsberry being called by the state as a witness testified on direct examination that he had X-ray pictures made of the face and head of Lee, the injured party, whereupon, he was asked what the X-ray pictures showed, to which appellant objected on the ground that the X-ray pictures themselves were the best evidence and was hearsay since no predicate had been laid for the introduction of secondary evidence. The objection was overruled and the court instructed the jury, "The doctor may state as a fact from his experience in dealing with the man. I will permit him to tell what he knows to be true." Whereupon, the doctor testified that Lee, the injured party, had sustained a fracture of the left molar bone and a broken nose, but did not have a fracture of the skull. The bill further recites that the witness did not have the X-ray pictures in his possession, did not produce them, and never testified as to who took them or where they were made. If we understand this bill correctly, the doctor certainly was entitled to state the condition of Lee's head and face when he treated him and what he found as a result of the examination of the injured party which the X-ray pictures may have confirmed or vice versa. There is nothing in the bill which shows that the jurors or anyone connected with the trial of the case other than the doctor was able to read the X-ray pictures. The introduction of the X-ray pictures would have served no useful purpose. We see no error reflected by the bill.

Bill of Exception No. 6 shows that Dr. Kingsberry in the course of his testimony stated that he administered to Lee, the injured party, penicillin to prevent the possibility of meningitis infection; that meningitis often results from injuries. Thereupon, the district attorney inquired of the witness if the injured party had contracted meningitis would it have been fatal, to which question and answer sought to be elicited ap-

pellant objected on the ground that the injured party did not contract meningitis; that it was speculative and inflammatory. The court overruled the objection and the witness testified, "If Lee had contracted meningitis, he could have died very easily." Appellant excepted to the ruling of the court. This testimony merely shows that all precautionary measures were resorted to by the doctor to prevent any infection or any disease that might be attributable to or due to the injury inflicted.

Bill of Exception No. 7 reflects the following occurrence: After Mrs. E. L. Keaton, a witness for defendant, had testified on direct examination by appellant's attorney that on the night in question she was a passer-by and saw a man in khaki beating the complaining witness, Lee, on the sidewalk some distance from the Wagon Wheel; that this man was neither Simpson nor Hall. The state's counsel, on cross examination, inquired of the witness whether or not she had talked to Simpson about the case, to which appellant objected on the ground that the conversation referred to occurred after the alleged occurrence and out of the presence of defendant, Hall; that the same was hearsay and was prejudicial. The objection was overruled and he excepted. Thereupon, the witness testified as follows: "I have not talked to Simpson about the case a good deal, but have discussed it with him. We read in the paper where he, Simpson, had been arrested, and he told us what it was supposed to be over. He told us he had put this man out, a man by the name of Lee, and Lee had filed charges against him. That is all." We fail to see how this testimony had any harmful effect.

Bill of Exception No. 8 shows that appellant endeavored to prove by D. H. Flippo that he owned and operated a Gulf filling station in Fort Worth, Texas; that about the time that the alleged offense was committed he had a man employed whose name was Ted Barton; that this man had worked for him about two months; that on Saturday, December 13th, he paid him for his services; that the said Barton never came back to work; that Barton had been working in khaki clothes. The bill further shows that he wanted to prove by W. G. Wicker that he operated a hotel on East Belknap Street in Fort Worth, Texas; that a man and his wife had engaged and occupied an apartment at his hotel; that the man, whose name he could not recall, worked at a Gulf filling station; that this man and his wife before leaving, advised the witness that if the apartment was not rented when they returned they would want it; that this man did not return, but sent for his property. However, he did receive a

letter from him postmarked Lawton, Oklahoma. The state objected to the testimony and the court sustained the objection to which appellant excepted. Even though Mrs. Keaton testified that she saw a man in khaki clothes beating the prosecuting witness, we do not believe that there is any connection shown between that party she claims she saw beating Lee and the party who worked at the Gulf filling station and had an apartment at the hotel, except that both wore khaki clothing. It is common knowledge that many men wear khaki clothing. Nor is it shown that this party who worked at the filling station and had an apartment at the hotel was anywhere near the place where the alleged assault was committed at the time of its commission. It occurs to us that this evidence was too speculative.

Bill of Exception No. 9 shows that after John Hays testified that the prosecuting witness, E. M. Lee, had attempted to bribe him by offering him $50 if he would testify that he saw Simpson, the co-defendant, strike Lee, the district attorney, on cross examination, inquired of the witness if in 1940 he had not been charged with burglary, to which question and answer sought to be elicited appellant objected. Thereupon, the jury was retired and in their absence the matter was further inquired into and it developed that the witness had never been charged with the offense of burglary; that counsel for the state knew that he had never been charged with such an offense at the time the question was propounded. No attempt to press the question further seems to have been made by the state.

Bill of Exception No. 10 reflects the following occurrence: After appellant had taken the witness stand, but before he had given any testimony, his counsel made a motion in which he requested the court to instruct the district attorney not to ask him any questions in the presence and hearing of the jury about his arrest in Gregg County for an assault with intent to murder since he had been "no billed" by the grand jury, nor about a charge of forgery at Anson in which he was "no billed," nor about his conviction for giving a worthless check for which his punishment was assessed at confinement in the county jail for 10 days; that if the district attorney desired to make such inquiry, he should do it then in the absence of the jury, to which the district attorney replied that such motion was a "waste of breath," that if appellant wanted to testify he had the right to do so and show what dispositon had been made of the cases. Thereupon, the court remarked that the district attorney may inquire into any offense where the grand jury had returned an indictment, or any offense involving moral turpitude. The

jury was then returned and the district attorney, on cross examination, inquired of the appellant whether or not he had been indicted by the grand jury of Gregg County about four years ago for the offense of an assault to murder, to which he replied in the negative. To the asking of the question, appellant objected on the ground that it placed defendant in an improper light before the jury and could have no other effect than to tell the jury that he was in the habit of assaulting people with intent to murder notwithstanding the district attorney had been informed that said testimony was not admissible. The objection was overruled and he excepted.

No question was asked the appellant touching the supposed offense at Anson. Although the district attorney may have had some doubt about the correctness of the statement made by appellant's attorney, he should have made the inquiry in the absence of the jury and satisfied himself that appellant had not been indicted either at Anson or in Gregg County. However, since appellant in response to the question replied in the negative, we do not believe that it had any injurious effect on the jury because they assessed his punishment at two years' confinement in the state penitentiary.

In support of his contention that the bill reflects reversible error, appellant cites us to the case of Bullington v. State, 78 Tex. Cr. R. 187 (180 S. W. 679). It is true that in that case the same proceeding was had as in the instant case, but that case is distinguishable from the instant case on two grounds. First, in that case, appellant answered the question relative to former indictments in the affirmative. The former indictment in that case was returned fourteen years prior thereto and was too remote to be utilized as affecting his credibility at a witness. And second, in that case, the jury, for a like offense as that charged in the instant case, assessed his punishment at confinement in the state penitentiary for a period of eight years. Therein lies the feature that distinguishes that case from the instant case.

By Bill of Exception No. 11, he complains of quite an extended argument made by the assistant district attorney. This bill is deficient in that it fails to negative the fact that the argument was not invited or provoked by appellant's counsel. See Richardson v. State, 99 Tex. Cr. R. 514 (270 S. W. 854) ; Winslow v. State, 50 Tex. Cr. R. 465 (98 S. W. 866) ; Sanchez v. State, 147 Tex. Cr. R. 436 (181 S. W. 2d 87) ; and Fuller v. State, 147 Tex. Cr. R. 250 (180 S. W. 2d 361).

By Bill of Exception No. 12 he complains of the following remarks by the assistant district attorney, to-wit: "You men on this jury may be the next victim of an attack like Mr. Hall made on Lee, and in arriving at your verdict, you must consider the fact that you may be the next victim." It seems to be the settled law of this state that an argument by state's counsel constitues reversible error only where the language complained of is manifestly improper, harmful and prejudicial, or where a mandatory provision of a statute is violated or some new and harmful fact is injected into the case. In support of what we have said, we refer to the case of Dunklage v. State, 198 S. W. (2d) 578, and cases there cited. The argument here complained of is not of such harmful nature that we can justly say it prejudicially affected him in his legal rights.

We note that the court in sentencing the defendant failed to make application of the indeterminate sentence law. Therefore, the sentence will be reformed so as to read, that the defendant shall be confined in the state penitentiary for a term of not less than one nor more than two years, and as so reformed, the judgment of the trial court is affirmed.

Opinion approved by the court.