**Michael Scott TURNER, Appellant.**

v.

**The STATE of Texas, Appellee.**

**No. 59055.**

Court of Criminal Appeals of Texas, Panel No. 3.

July 2, 1980.

Rehearing Denied Sept. 10, 1980.

Dennis W. McGill, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and John C. Kilpatrick, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appeal follows conviction of appellant by a jury for the offense of indecency with a

child denounced by V.T.C.A. Penal Code, § 21.11(a)(2),[1] wherein the court assessed punishment at confinement in the Texas Department of Corrections for four years, notwithstanding his sworn application for probation.

In the four grounds of error presented, complaint is made that the evidence is insufficient to sustain the jury verdict; that the State was improperly permitted to bolster the testimony of the complainant; that the trial court erred in overruling appellant's motion to quash the in-court identification of appellant by the complainant because of an impermissibly suggestive lineup procedure; and that the trial court erred in refusing to permit appellant's sister to testify as to a defensive theory relevant to the complainant's identification of appellant. We will overrule these contentions and affirm.

On the afternoon of February 22, 1977 the complaining witness, a twelve year old girl we will call Anne,[2] was returning home from class at an elementary school in Lubbock when she observed a dark blue Chevrolet Chevette travelling west on a public street; it then made a turn to the same direction she was walking on another street. The vehicle came to a stop ahead of the complainant and, as she passed by it, she looked into the open right window and saw the occupant of the vehicle sitting on the center console, straddling the floorboard gearshift and leaning forward and over. Anne testified that the man in the vehicle had on a shirt and jeans, though the jeans were "past his knees" as were his underwear; he was, in other words, naked from waist to knees. The complainant stated that as she looked into the automobile, the occupant "had his hands on his private parts" and "he was just sort of *playing* with

1. As pertinent here the offense occurs when one exposes any part of his genitals, knowing that a child, younger than seventeen years and not his spouse, is present, with intent to arouse or gratify the sexual desire of any person.

2. In deference to their tender years and to avoid possible embarrassment if identified, children who experience sexually oriented or-

deals are frequently designated by initials of first and last names. Finding the format somewhat awkward for easy communication, the writer of this opinion has determined to identify a young victim by a given name, with no hint of surname, and to skimp descriptive details of the scene, thereby still preserving anonymity.

it," [3] while at the same time smiling and laughing at her. During the course of this episode, Anne was no more than three feet from the vehicle and its occupant. She walked fastly away and some two blocks later looked back to find the car had left.

From her encounter with the occupant of the Chevette, Anne became scared and related the incident to her mother who in turn reported it to the police. On March 10, 1977, Anne was again walking home from school when she had the occasion to see the same Chevette at an intersection on the same street; stopped there, its driver motioned to her and other children to cross in front of the Chevette; he was then seen by Anne to be the same person who had exposed himself to her on February 22. Anne wrote down the license number of the Chevette and gave it to her mother who again notified police. Later that same day, Anne went to the Lubbock police station to view a lineup—more about which we will write later—and picked out appellant as the man who had exposed himself to her.

Officer Randy McGuire of the Lubbock Police Department testified that he spoke with Anne's father on February 22, 1977 in regard to the indecent exposure episode that same day. When asked what description the complainant gave of the male who had exposed himself, defense counsel immediately objected, the trial court sustained the objection and instructed the jury to disregard the question for all purposes. McGuire stated that after being given a description of the person who exposed himself, he stopped appellant's automobile, took him into custody and advised him of his constitutional rights.

Appellant called Barbara Fannon, his sister, who stated that she read of her brother's arrest in the newspaper. Defense counsel attempted to elicit from the witness the fact that there were other persons similar in appearance to her brother driving blue compact cars in and around Lubbock. After the State's objection to such a question was sustained, the trial court removed the jury and permitted defense counsel to elicit the answer to perfect his Bill of Exception. The witness stated that she noticed several persons including one man who resembled her brother so much that she waved to him. This man, recounted the witness, was driving a dark blue Chevette "just like my little brother's." Appellant did not testify.

█ In arguing under his first ground of error that the evidence is insufficient to support the verdict rendered by the jury, appellant stresses what he perceives as a lack of evidence to prove an essential ingredient in this type of offense—"the proposition that the Defendant knew of the presence of the child and had the intention to arouse or gratify the sexual desire of a person, during the time that he had knowledge of the presence of a child." Recognizing that the Court has consistently held that knowledge and intent can be inferred from conduct of, remarks by and circumstances surrounding the acts engaged in by an accused, e. g., *Allen v. State*, 478 S.W.2d 946 (Tex.Cr.App.1972) and *Dunlap v. State*, 440 S.W.2d 672 (Tex.Cr.App.1969), appellant contrasts the factual situation in *Bowles v. State*, 550 S.W.2d 84 (Tex.Cr.App.1977) [4] and points to attention-getting conduct found in other cases decided by the Court.[5]

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. In *Bowles* the accused called the child to his car and then in her presence raised the lower part of his body to expose his penis to the child—just as he had done the day before at another location.

5. In *Dunlap*, supra, the driver opened his car door and exposed himself to a young girl walking by; in *Allen*, supra, a man with his fly unzipped beckoned to a female child and with

hand movements directed her attention to the area of exposure; the accused in *Meredith v. State*, 171 Tex.Cr.R. 359, 350 S.W.2d 550 (1961) walked uninvited into the yard of an adult mother and, while asking *her* where he could obtain sexual gratification, took out *his* private parts in her presence and in the view of her *children*; *Spikes v. State*, 386 S.W.2d 801 (Tex. Cr.App.1965) involved a flurry of similar indecent exposures: a driver opening a car door, beckoning to a young girl on the way to a store and in her view playing with his privates; re-

For its part, the State also points to the recognized rule of review in such cases that permits inferences of knowledge and intent to be drawn from details of the factual situation, and it reminds us of the familiar standard that the evidence must be viewed in the light most favorable to the verdict to determine its sufficiency to sustain the judgment of conviction, referring to still another indecent exposure decision, *Allen v. State*, 478 S.W.2d 946 (Tex.Cr.App.1972).[6] Still, though sharply challenged to do so by the analysis of prior opinions in the area made by appellant, see notes 3 and 4 and accompanying text, *ante*, the State does not refer to any opinion in which the accused did *not* somehow call attention of the prospective viewer to his purpose to arouse or gratify sexual desire[7]—a specific intent that is an essential element of the offense, *Wesley v. State*, 548 S.W.2d 37 (Tex.Cr.App. 1977)—thereby also indicating knowledge that a child is present.[8] Nor, it must be admitted, have we found any Texas case that upholds a conviction for indecency with a child under § 21.11(a)(2), supra, where the record is devoid of some character of attracting attention to the exposure.

■ That in finding the evidence sufficient to convict the Court has always pointed to some word or deed on the part of the accused which invited the minor to view his displayed genitals does not mean that such an invitation is a prerequisite to finding the knowledge that the child is present and the essential intent to arouse or gratify sexual desire that are both necessary to sustain a conviction for violating § 21.11(a)(2). It simply indicates that evidence of that nature was in the case and, if believed by the fact finder, tended to show the damning knowledge and incriminating intent that must be found in order to convict. Attention-getting is merely an evidentiary matter—not an element of the offense.

■ Nevertheless, emphasizing what he conceives as an absolute lack of testimony to show or from which it may be inferred that appellant had any knowledge of the presence of Anne when she made her observations of his exposure, appellant argues that he "neither called to, spoke to, waived [sic] at, made any motions or gestures, caused any noise to be made, or did any other act which would call attention to himself." Rather, appellant urges the correct inferences to be drawn are that he "was not attempting public exposure, but indeed was leaning forward so as not to be in view of anyone who was passing by."[9] From adequate testimony, though, we find the jury was justified in inferring and finding the

peating the exhibition as she returned from that store; then reprising it in front of her sister and other children as they stood in their yard.

**6.** Actually, the State cites *Smith v. State*, 478 S.W.2d 947 (Tex.Cr.App.1972), inadvertently to be sure for it begins on the same page the *Allen* opinion ends.

**7.** In the *Allen* case that the State does cite, the accused followed the now familiar mode of beckoning, making motions and pointing toward his exposed parts and later again seizing the opportunity to put himself on display.

**8.** Compare *Briceno v. State*, 580 S.W.2d 842 (Tex.Cr.App.1979) where the issue of knowledge was raised clearly enough to have required an appropriate charge to resolve it. There, like here, the children testified that the busy driver of the stopped automobile only "looked toward" them as they viewed him through the passenger window of his car,

whereas the accused testified he was so preoccupied with masturbating that he did not notice the presence of two girls. Of course here our particular issue is sufficiency of the evidence to show indecency with a child rather than failing to instruct on the lesser included offense of indecent exposure. Since the latter problem is not in the case, *Briceno* is only illuminating in its analysis.

**9.** Appellant made much the same argument before the trial court in support of one of his grounds alleged for a new trial. The State rejoined that its evidence was sufficient, pointing especially to testimony of laughter and smile by appellant as he played with himself and asserting this was proof of knowledge of Anne's presence—"otherwise why would he smile when he observed her?" We do not know how the parties argued the facts to the jury for their summations are not in our record.

requisite knowledge and intent elements of the offense, even without evidence of appellant's calling attention to himself by direct word or deed, as is now explained.

The Chevette being driven by appellant was first seen by Anne travelling westward on a street that intersects with the street adjacent to which she was walking south. She was crossing an alleyway when appellant made a left turn onto her street; in maneuvering his car in that ninety degree arc and then driving south appellant's line of vision easily included the person of Anne as she walked along near the west curb and crossed the alleyway. Moving on parallel with her direction and passing her on his right, appellant pulled over to the curb and stopped his Chevette just ahead of Anne's pedestrian location. From these movements and their respective positions, the jury was permitted to infer that in his left turn and driving on south appellant saw Anne as she walked alone near the street. Furthermore, the jury was allowed to believe, as we do, that appellant was not operating his moving Chevette from a seated position on the center console, straddling its stick shift, so that only after coming to a stop ahead of Anne did he assume that posture with his pants and undershorts "past his knees"—in expectation and anticipation that Anne would then walk by his car, just as she did, and see him.[10] When he began to play with himself the jury, we find, was solidly justified in concluding that he both knew of the presence of the child and intended to arouse and gratify his own sexual desire. The contemporaneous laugh and certain smile, as he reacted to her viewing his accomplishing that intent and purpose, confirm both.

10. We may attribute to appellant what all know: the frontal interior of a stilled small automobile such as a Chevrolet Chevette is easily visible by one walking alongside a curb three or four feet away. Anne said she looked to the car in wonderment that no one got out of it after it came to a stop, an altogether normal and rational reaction.

11. Section 1 of which provided in pertinent part:

"It shall be unlawful for any person *with lascivious intent* to *knowingly* and intention-

An old code case for the offense of indecent exposure, under Article 535c, P.C. 1925, as amended,[11] supports the finding that the evidence here is sufficient to sustain proof of the similar elements of knowledge of presence of the child and intent to arouse and satisfy sexual desire. In *Wilson v. State*, 388 S.W.2d 720 (Tex.Cr.App.1965) the accused, driving a foreign made car, stopped at an intersection alongside an eleven year old girl, standing still on a bicycle, where, according to him, "She could see real good the way she was." In his own behalf, Wilson testified he did not know his pants were unzipped and his penis was showing until he noticed the girl "looked rather startled"[12] and he looked down himself, became embarrassed and put his hand over his somewhat erect penis in an attempt to cover it up; he denied any intention to expose himself to the little girl. The Court, without further explication, found the evidence sufficient to sustain the conviction, as we also do here.

In his second ground of error, appellant contends that the trial court erred in overruling his motion for a mistrial when the prosecutor attempted to bolster the testimony of a State's witness in violation of a previously granted motion in limine. Prior to trial, the trial court undertook to preclude the State from making any "reference to any purported out-of-court-identification of the Defendant by one witness bolstering another." However, after Lubbock Police Officer Randy McGuire was called to the stand by the State, the following occurred:

Q: [By the prosecutor]: Did you have an occasion on that day to have conversation [sic] with . . . [Anne]?

ally expose his . . . private parts or genital organs to any other person . . . under the age of sixteen . . . years.

12. The girl testified that she had never seen the private parts of a man and what she thought she was viewing was "a badly swollen thumb on appellant's left hand which was in his lap;" not until she was moving away on her bicycle did she realize what he had truly done.

A: Yes, sir, I did.

Q: Officer, were you able to get a description of the person alleged to have exposed himself to the little girl?

A: Yes, sir, I did.

Q: What was that description, please?

A: She described him—

Appellant's objection was sustained, the jury instructed to disregard the prosecutor's question, and a motion for mistrial was overruled. Shortly thereafter, the subject again drifted towards that area proscribed by the motion in limine:

Q: Did you have an occasion to meet with Michael Scott Turner on that day?

A: Yes, sir.

    \*    \*    \*    \*    \*    \*

Q: Now, Officer, would you describe, please, the car this person was driving?

A: It was a dark blue Chevrolet Chevette.

Q: Did that match the description that you had from the complaining witness?

THE COURT: Just—

Again, appellant's objection was sustained, the jury instructed to disregard, and a motion for mistrial was overruled. Appellant now contends that these colloquies were an impermissible attempt by the State to bolster the testimony of an unimpeached witness, a practice consistently condemned by this Court. See, e. g., *Smith v. State*, 595 S.W.2d 120 (Tex.Cr.App.1980); *Johnson v. State*, 583 S.W.2d 399 (Tex.Cr.App.1979); *Smith v. State*, 520 S.W.2d 383 (Tex.Cr.App. 1975). At the outset we note that in neither instance did the witness ever answer the improper question, the trial court promptly sustaining the objection and issuing a curative instruction to disregard. The cases are legion holding that an unanswered question in these circumstances does not reflect reversible error *unless* the question was so calculated to inflame the minds of the jurors as to suggest the improbability of withdrawing the impression produced on their minds. *Seaton v. State*, 564 S.W.2d

721 (Tex.Cr.App.1978); *Cavender v. State*, 547 S.W.2d 601 (Tex.Cr.App.1977); *Sheppard v. State*, 545 S.W.2d 816 (Tex.Cr.App. 1977). Appellant's reliance on *Lyons v. State*, 388 S.W.2d 950 (Tex.Cr.App.1965) is misplaced since the officer witnesses in *Lyons* were in fact permitted to bolster an unimpeached witness over timely objection, a situation unlike the case at bar. We therefore find that the trial court's prompt action cured whatever harm which may have attended the mere asking of the unanswered questions. Appellant's second ground of error is overruled.

In ground of error number three, complaint is made that the trial court erred in overruling appellant's motion to quash the complainant's in-court identification because of an unduly suggestive lineup. See *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The thrust of this contention is that the complainant stated that she was expecting to see the person who had exposed himself to her in the lineup and this, coupled with the fact that the only two other individuals in the five person lineup with a beard were not physically close to appellant in size and hair color, suggests an impermissibly suggestive lineup procedure condemned in *Foster v. California*, supra. We do not agree.

The record reflects that the trial court, after a hearing on this matter outside of the presence of the jury, found that the complainant's in-court identification was of independent origin and was an independent recollection of appellant at the time of the alleged offense. The trial court further found that the in-court identification was not tainted by the complained of lineup procedure because it did not give rise to a "very substantial likelihood of irreparable misidentification." The findings of the trial court are completely supported by the record and that the identification was founded on observations made contemporaneously with the offense finds added support in our recitation of the facts and by our disposition of ground of error number

---

one *ante.* Regarding the correlative contention that the participants in the lineup possessed physical characteristics not totally like that of appellant, we pause only to note that while it might be the better practice to utilize those persons in a lineup with features matching the accused, that is not always practical, and the Court has held that neither due process nor common sense requires such a procedure. *Jordan v. State,* 495 S.W.2d 949 (Tex.Cr.App.1973); *Dickson v. State,* 492 S.W.2d 267 (Tex.Cr.App.1973); *Ward v. State,* 474 S.W.2d 471, 476, ns. 4 & 5 (Tex.Cr.App.1971). Appellant's third ground of error is overruled.

In his fourth and final ground of error, appellant advances the contention that the trial court erred in refusing to permit him to introduce the proffered testimony of Barbara Fannon,[13] appellant's sister, that there were other males in the vicinity of the crime scene who physically resembled appellant and who drove a similar Chevette. Such testimony, argues appellant, was highly relevant to the defensive issue of misidentification on the part of the complainant. This contention is without merit. A like argument was rejected by the Court in *Hall v. State,* 153 Tex.Cr.R. 215, 219 S.W.2d 475 (Tex.Cr.App.1949), where the accused sought to show that a man clad in khaki pants was in the neighborhood and may have been the perpetrator of the crime. In disposing of this contention, Judge Krueger noted:

> "Even though Mrs. Keaton testified that she saw a man in khaki clothes beating the prosecuting witness, *we do not believe that there is any connection shown between that party she claims she saw beating Lee and the party who worked at the Gulf filling station . . . except that both wore khaki clothing.* It is common knowledge that many men wear khaki clothing . . . *It occurs to us that this evidence was too speculative.*"

*Id.* at 479.

It occurs to us too that the proffered evidence was most speculative and, further,

that the reasoning of *Hall* is of equally compelling application to this case. The trial court did not, therefore, err in refusing to permit the witness to so testify. Appellant's fourth and final ground of error is overruled.

The judgment is affirmed.

---

**13.** The last name of this witness is spelled one way by the court reporter and differently by counsel in his appellate brief; we have opted to use the former.