

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00539-CR

Raul **GARZA**, III,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CR-6698
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:       Catherine Stone, Chief Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  July 31, 2013

AFFIRMED

Raul Garza, III, challenges his conviction for impersonating a public servant, arguing that

the evidence is insufficient to support the jury's verdict. We affirm the judgment of the trial court.

### BACKGROUND

The complainant, Jessica Gonzales, testified that on the evening of June 24, 2011, she was

working as a prostitute in southeast San Antonio when Garza grabbed her by the back of the hair

while she was at a payphone. Garza told Gonzales that he was a Bexar County Sheriff and made

her get into his vehicle. Gonzales stated that as a prostitute in the area, she frequently saw vehicles

similar to Garza's Crown Victoria[1] and that such vehicles are commonly associated with police officers. Once inside the vehicle, Garza threatened to take Gonzales to jail unless she performed oral sex on him. Gonzales testified that she initially requested payment; however, Garza said he would not pay her because he was a police officer. Gonzales complied despite Garza's refusal to pay because she was afraid of going to jail. Gonzales stated that she became alarmed when Garza asked her to "do it like a little boy would like it." Garza also asked whether she had any children, and if he could photograph them. Gonzales testified that after she performed oral sex, she spit Garza's semen onto a blue napkin and threw it out the window. The police department's forensic scientist testified that the DNA found on the blue napkin at the crime scene matched the DNA taken from Garza's penile swabs.

Gonzales further testified that after getting out of the vehicle, she telephoned 911 to report Garza out of concern for her children and her belief that he was a pedophile. Gonzales told the 911 dispatcher that Garza claimed to be a Bexar County Sheriff. Gonzales described Garza's physical appearance, vehicle, license plate number, and the location where the incident occurred. Gonzales testified that she believed Garza to be a police officer because of his appearance, his vehicle, the spotlessness of the interior of his vehicle, his aggressive demeanor, and because he claimed to be a Bexar County Sheriff.

Garza was interrogated by police later that night, and the video recording of his statement was played for the jury; Garza also testified in court. Garza stated that prostitutes often think he is a police officer based on his appearance, posture, and way of speaking. Garza denied forcing Gonzales into his vehicle, and also denied that he presented himself as a Bexar County Sheriff or police officer. Garza stated that he initially agreed to pay Gonzales for oral sex, but later decided

---

[1] Another witness testified that Garza's vehicle was actually a Lincoln, which is similar to the Crown Victoria used by police and sheriffs as undercover vehicles.

not to because he was dissatisfied and thought she was "hideous." Garza stated that as a result, Gonzales became upset and refused to exit his vehicle. Garza then threatened Gonzales that unless she exited his vehicle, he was going to "put her on profile," while taking out a pen and piece of paper to write down information. Garza stated that he did this to intimidate her to get out of the vehicle. Garza testified that Gonzales did not ask for clarification about what he meant by saying she would be "put on your profile," so no clarification was offered, and she got out of his car. Garza stated that the "profile" he was referring to was a ratings website.

On the night of the offense, Garza only had $10 cash on his person. Garza stated that the average rate for oral sex was $20, and that a prostitute would not do anything for less than $20. Garza stated that although he knew it was wrong not to pay for sexual acts, he has refused to pay prostitutes on several occasions and intimidated them to get out of his vehicle with the threat of putting them "on profile." Garza admitted that this phrase could lead someone to believe that he was referring to a profile associated with law enforcement. When asked if in fact he was using this language to sound like an officer and intimidate prostitutes, he answered, "it is what it is."

After giving his statement to police, Garza was escorted by Officer Elizabeth Padron to the hospital so that penile swabs could be taken. Padron testified that Garza told her that he would tell prostitutes that he was a Bexar County Sheriff's officer to get out of paying them because they were disgusting and not worth the money.

## DISCUSSION

On appeal, Garza challenges the sufficiency of the evidence to support his conviction, arguing that he never held himself out to be a Bexar County Sheriff. In particular, Garza claims that no reasonable jury could have found him guilty beyond a reasonable doubt because his testimony was more believable than Gonzales's, a prostitute who admitted to using heroin on the night of the offense and who had a criminal record consisting of 17 prior arrests.

*Standard of Review*

In reviewing the sufficiency of the evidence, we determine whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The jury may make reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury may draw reasonable inferences from the basic facts to the ultimate facts). We resolve any inconsistencies in the evidence in favor of the judgment. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

*Applicable Law and Analysis*

A person commits the offense of impersonating a public servant if he "impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts[.]" TEX. PENAL CODE ANN. § 37.11(a)(1) (West 2011). Count I of the indictment charged that on June 24, 2011, Garza impersonated a public servant, namely; a peace officer and/or a Bexar County Sheriff's Office Employee with intent to induce J. Gonzales to submit to his pretended official authority or to rely on his pretended official acts by (1) grabbing her and/or telling her that she could go to jail; and/or (2) by having J. Gonzales perform oral sex; and/or (3) by not paying for a sex act performed by J. Gonzales. To support the conviction, the State was required to prove beyond a reasonable doubt that Garza committed any one of the three acts described in the indictment with the requisite intent.

A person acts intentionally, or with intent, with respect to the nature of his conduct or result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the

result.  TEX. PENAL CODE ANN. § 6.03(a) (West 2011).  The Texas Court of Criminal Appeals has consistently held that intent may be inferred from the conduct of, and remarks by, an accused and the circumstances surrounding the acts engaged in by an accused.  *See, e.g.*, *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. [Panel Op.] 1980).

We conclude that Gonzales's and Padron's testimony supports a finding that Garza intended to induce reliance on his pretended authority by telling Gonzales he was a Bexar County Sheriff and threatening to put her "on profile" in order to intimidate her to exit his vehicle without payment after performing oral sex.  These statements were made with intent to induce Gonzales to submit to Garza's pretended authority.  To the extent Garza claims Gonzales's testimony is inconsistent with his, the jury was the factfinder, and we defer to the jury's resolution of any conflicts in the evidence and to its assessment of the witnesses' credibility.  *See Brooks*, 323 S.W.3d at 899; *Curry*, 30 S.W.3d at 406; *see also Marc v. State*, 166 S.W.3d 767, 772 (Tex. App.— Fort Worth 2005, pet. ref'd) (jury was free to believe victim despite her history as a prostitute, drug user, and criminal convictions).  Viewing the evidence in the light most favorable to the verdict, we hold the evidence is sufficient to support the jury's finding that Garza impersonated a public servant within the meaning of section 37.11.  Garza's issue is therefore overruled.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

Do not publish