**AFFIRM; and Opinion Filed October 3, 2018.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00686-CR**

**FRANKLIN EDWARD YATES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 15-10580-86-F**

# MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Brown

Following a jury trial, appellant Franklin Edward Yates was convicted of indecency with a child by exposure and sentenced to ten years' confinement. In a single issue, appellant contends the evidence is insufficient to support his conviction. For the following reasons, we affirm the trial court's judgment.

BACKGROUND

Appellant lived in a trailer on his sister Jennifer Walker's property near her house. Appellant often entered Walker's house to bathe and eat. Walker's granddaughter K.W. lived with Walker and her husband.

On or about August 6, 2015, another of Walker's granddaughters, Jada,[1] spent the night at Walker's house. Jada, aged ten at that time and twelve at the time of trial, testified she and K.W. had watched television and fallen asleep on a long couch in the living room. Jada awoke to see appellant sitting on a small couch nearby. Appellant's pants were down to his ankles, and he was playing with his private part, moving it around, and moaning. Appellant moved near K.W., who was awake, and K.W. then moved toward Jada. Appellant moved next to Jada, continued playing with himself, and touched her legs. She pulled her legs in, pressed her head into the couch, and tried to fall asleep. Jada testified it was very dark in the house, but the television was on. Jada told her mother about the incident after her mother picked her up. Jada did not tell Walker about the incident the next morning because K.W. had already told Walker and Jada trusted her mother a little bit more.

K.W., aged eight at the time of the incident and ten at the time of trial, testified she saw appellant enter the house that night. He was sitting on the couch and "messing with his private parts" with his hands. Appellant was clothed, and K.W. did not see appellant's private parts. Appellant moved toward her and played with himself beside her. He touched her leg "a little bit" and she moved. Jada was in the room the whole time. According to K.W., the television was off at the time and it was really dark. Even though it was very, very dark, K.W. could see appellant and knew he was playing with himself "because he was shaking it around and everything like that." K.W. subsequently met with Tracy Ramirez at the Children's Advocacy Center. There, K.W. wrote that appellant did "something bad" to her by touching her leg and having "me time," which she defined as "mess[ing] with your private part." Although K.W. told Ramirez appellant had been sleeping when he had "me time," she testified she did not know whether appellant was awake or asleep at the time.

---

[1] Jada is a pseudonym used at trial.

Jada's mother, Amanda Zimmerman, testified Jada acted differently after the incident. She described Jada as anxious and not wanting to sleep in her room by herself or spend the night with friends. Zimmerman took Jada to the Children's Advocacy Center for a forensic interview.

Ramirez interviewed both girls at the Children's Advocacy Center. Ramirez testified that K.W. described seeing appellant with his hands on his penis, but said he was sleeping and clothed. K.W. moved away from appellant because his arm was shaking and kept hitting her. K.W., however, also told Ramirez she was not allowed to talk about anything bad or she would get in trouble. Ramirez spoke with Walker after the interview, and Walker said she did not believe what happened was a big deal and only called the police because her daughter, Zimmerman, made her.

Ramirez interviewed Jada approximately two weeks later. Jada provided the following account of the incident: she spent the night at her grandparent's house; the television was on; she and K.W. were sleeping on the couch; Jada "kind of woke up" and saw appellant playing with himself; appellant's "wienie" was sticking up and he was "kind of jiggling it around" with his pants down; he was breathing heavily and "scooted" towards K.W.; and K.W. moved toward Jada to get away from appellant and said, "Look, look, what he's doing." Using a body drawing, Jada identified appellant's "wienie" as a penis. Based on the girls' outcries, Ramirez believed appellant was masturbating in front of them. Ramirez acknowledged, though, that children will sometime make thing up for attention or to avoid being punished.

Jimmy Weisbruch, a Kaufman County Sheriff's Office investigator, testified that Walker reported the offense. Weisbruch and his partner arrested appellant. During transport, appellant stated he had fallen asleep in the bathtub for several hours and, when he awoke, was cold and had lost feeling in his hands. He suffered from carpal tunnel and was shaking his hands in an effort to regain feeling while also looking for his telephone. According to appellant, the girls "did this"

because he caught them looking at pornography on his telephone. Further, there was no way they could have seen what he was doing because the living room had been too dark.

Walker testified that, earlier that evening, they had all been in the living room, and appellant played with the girls. Appellant left, and the girls fell asleep on the couch. Walker turned off the television. Appellant returned to bathe and, although Walker usually waited up until appellant left, she was tired and went to bed, closing her bedroom door. Walker testified appellant fell asleep in the bathtub all the time. He had stiff joints and carpel tunnel and was unable to move his hands and his fingers upon awakening.

The next morning, K.W. told Walker that appellant had been acting crazy and "doing me time." Jada asked what "me time" was, and Walker told her it was playing with yourself or masturbating. Walker asked Jada if she had seen anything, and Jada responded that she had not. Later, Walker asked K.W. what she meant by "me time," and K.W. responded that appellant was playing with himself and he moved her head and arm when she was laying on the couch. Walker confronted appellant, who explained that he had moved K.W. while looking for his telephone. However, Walker acknowledged that K.W. should have known the difference between someone shaking their hands while looking for a telephone and someone masturbating in front of her. When K.W. referred to "me time," the only thing Walker could think K.W. was referring to was appellant masturbating in front of her. Walker added though that K.W.'s eyesight was not good, she did not wear her glasses when sleeping, and Walker's property was remote and very dark at night.

Appellant's daughter Melissa Kay Bruton testified Zimmerman said Jada did not see anything when Zimmerman and Bruton first discussed the incident. Bruton also noted Zimmerman and appellant have never gotten along and, Jada, an emotional child, wanted to please her mother like every daughter wants to please their mother.

Appellant's employer Jerry Cornelius testified appellant's hands have not functioned in the mornings for the past seven or eight years. Appellant worked as a mechanic and in construction, and, according to Cornelius, "once [appellant's] hands get doing, he's a good worker."

Appellant testified Walker had been mistaken about some events the day of the incident. He had not been in the living room playing with the girls earlier that evening. Instead, he had worked on a mower, which the girls rode, and then gone to work. He entered the house when he returned, but nobody was there. He fell asleep in the bathtub, woke up, and was "freezing to death." Appellant could not find his telephone, but Walker's bedroom door was open (not closed as she testified) and he did not want to turn on any lights. Nevertheless, he felt around for a light, but had no feeling in his hands. Appellant explained he had major problems with his hands over the past few years. He did not know the source of the problem, but he lacked feeling in his hands in the mornings and had to rub them thirty to forty-five minutes in order to regain circulation. So, appellant sat in the living room, shaking because he was cold, and rubbing his hands. He did not find his telephone in the small couch, so he started feeling for it on the long couch, finally waking K.W. to ask if she had it. She looked up, was startled, and moved to the other couch. He asked again about the telephone, and she said she did not have it. He got up to leave and, when he opened the door, saw by moonlight that Jada was asleep at the end of the couch. Before that, he had not known she was there.

Appellant acknowledged sending the district attorney a letter in which he wrote that he struck a lighter to find his way to the couch and did not want to turn on a light because his two nieces were asleep on the couch. At trial, he explained the letter was not a "step-by-step-testimony" of what happened; he had learned later that the girls were asleep on the couch.

Appellant testified he would never expose himself to the girls and felt like a victim because he did not do anything. K.W. told the truth about him making sounds because he had been

shivering and rubbing his arms, but he did not know how she could have seen anything because he had to wake her up to ask about his telephone. The girls made up that he entered the house from outside because he had been in the house already. He believed the girls' stories were so different from his because they had taken his telephone and did not want to get caught. The girls also took money from his wallet. Appellant also believed Jada made her outcry because she starved for her mother's attention and her mother has "had it out" for appellant ever since he slapped her when she was thirteen.

APPLICABLE LAW

In reviewing the sufficiency of the evidence, we consider all evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). We defer to the jury, which must weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We determine only whether the necessary inferences are reasonable based on the cumulative force of the evidence viewed in the light most favorable to the verdict. *See Clayton*, 235 S.W.3d at 778.

A person commits the offense of indecency with a child by exposure if the person, with intent to arouse or gratify the sexual desire of any person, exposes the person's anus or any part of the person's genitals, knowing a child younger than seventeen is present. TEX. PEN. CODE ANN. § 21.11(a)(2)(A) (West 2011). A defendant's knowledge may be inferred from his conduct and the circumstances surrounding his actions. *See Turner v. State*, 600 S.W.2d 927, 929-30 (Tex. Crim. App. [Panel Op.] 1980); *Harty v. State*, 552 S.W.3d 928, 932 (Tex. App.—Texarkana 2018, no pet.); *Lopez v. State*, 402 S.W.3d 55, 59 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Circumstantial evidence is as probative as direct evidence and may be sufficient to support a conviction. *See Clayton*, 235 S.W.3d at 778. And, a child victim's testimony alone is sufficient to support a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Navarro v. State*, 241 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

### ANALYSIS

Here, the indictment charges that appellant, with the intent to arouse or gratify his sexual desire, exposed his genitals, knowing that Jada, a child younger than seventeen years of age, was present on or about August 6, 2015. Appellant complains the evidence is legally insufficient to support his conviction and, specifically, to prove that he knew that Jada was present.

Although disputed by appellant, Walker testified that appellant and both girls were present, and appellant had played with the girls, in the living room that evening before he bathed. Jada testified that she awoke to see appellant playing with his private part, moving it around, and moaning. Appellant moved near K.W. first and then next to Jada, continuing to play with himself, and touched her legs. Jada's outcry to Ramirez, as well as K.W.'s testimony and outcry, corroborates that appellant was "messing with his private parts" and was close enough to the girls to touch them. At trial appellant denied knowing Jada was present, but he wrote after his arrest that he had not wanted to turn on living room lights because his two nieces were asleep on the couch.

Appellant cross-examined each of the witnesses, and the jury was free to believe all or any part of each witnesses' testimony. *See Clayton*, 235 S.W.3d at 778. Here, the jury assessed the witnesses' credibility and resolved the conflicts in the testimony; in doing so, it could have reasonably inferred, from both appellant's conduct and the circumstances, that he knew Jada was present. *See, e.g., Turner*, 600 S.W.2d at 929-30; *Harty*, 552 S.W.3d at 932-33. Viewing all the

evidence in the light most favorable to the verdict, we conclude the jury could have rationally found the essential elements of the offense, including that appellant knew Jada was present at the time. Accordingly, we overrule appellant's sole issue.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

170686F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FRANKLIN EDWARD YATES, Appellant

No. 05-17-00686-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District
Court, Kaufman County, Texas
Trial Court Cause No. 15-10580-86-F.
Opinion delivered by Justice Brown;
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of October, 2018.