

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00132-CR

_____

KEVIN LERAY HENDERSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 16,027

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

Kevin Leray Henderson appeals his conviction for indecency with a child. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). A jury found Henderson guilty, Henderson pled true to two felony enhancements, and the trial court assessed punishment at eighty years' imprisonment.

Henderson raises two issues on appeal challenging the legal sufficiency of the evidence and the admission of evidence concerning an extraneous offense at the guilt/innocence stage of trial.

## I. Sufficiency of the Evidence Standard

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App.

2

1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. at 240.

Thus, the State had the burden to establish that (1) Henderson, (2) with intent to arouse or gratify the sexual desire of any person, (3) exposed his genitals, (4) knowing a child younger than seventeen years of age was present. TEX. PENAL CODE ANN. § 21.11. Henderson has only challenged the evidence of the last element—knowing a child was present.

## II. Facts

Alisa Dearman is the assistant manager of the Hidden Bend Apartments where this incident took place. On September 30, 2011, Henderson was a maintenance man working at the apartment unit on the apartment directly above apartment 22 where R.A., mother of the child victim, and her family lived. Dearman was conversing with Henderson and a tenant, Crystal Weeks, outside on the grounds of the apartment unit while R.A. was loading her vehicle as the child sat in the front seat "waving and hollering." Dearman spoke to the child and "everybody split up." Dearman and Weeks went into their apartments, and Henderson "shot up the stairs" to apartment 46.

R.A. testified when she returned after picking up her daughter, M.A., from pre-kindergarten classes, she saw Henderson working in the second floor apartment above her first floor apartment. After being in the apartment "a little bit of time," R.A. and M.A. returned to the parking lot. R.A. testified that she needed to untangle some hangers before bringing them in the

3

apartment. R.A. placed M.A. in the backseat, but testified, "She would be in the truck for a little while and then she would get out and I'd have to scoop her back in so I can keep an eye on her."

R.A. then described the following events:

> Like I said, it was hard to keep her in -- intact in the Suburban. I kept having to go after her, but there for awhile, you know, I just got really occupied by untangling the hangers that there was just silence and, you know, with children if it's quiet, they're into something or they've run off and it worried me and I called out for [M.A.], she didn't answer me. At that point I walked around my truck, the Suburban, and I said [M.A.], and I didn't see her directly in front, she was on the other side in the parking area but at the corner of the passenger of my Suburban and I saw that she was looking up at the apartment and I looked up and I saw Mr. Henderson, he was masturbating and she saw him and I screamed and I grabbed her and I took her in my apartment.
>
> . . . .
>
> He was standing at the door, the door was open and it was -- the way the door was open it was kind of in the kitchen area and he was standing there. It was wide enough and I saw what he was doing and my daughter saw. She's -- I don't know how long she saw but she saw him do that. She was paying attention to what he was doing.

On appeal and at trial, Henderson argued he was inside the apartment. R.A. testified Henderson was standing "at the door" and the door was open. After R.A. screamed, picked up her child, and went inside her apartment, Henderson ran down the stairs saying, "[Y]ou didn't see anything, y'all didn't see anything, nothing happened, I'm going to go talk to [Alisa]."

The State introduced evidence of an extraneous offense. J.B., a child under seventeen years of age who resided at the apartment complex, testified that she observed Henderson

4

masturbating in a doorway on two occasions.[1] On the first occasion, J.B. saw Henderson "standing in the doorway with his hands in his pants and I just saw like his hands moving and stuff, but I didn't know what he was doing for sure or whatever." When asked, "Was he inside the apartment or outside," J.B. responded, "He wasn't like -- it was just in the doorway. I don't know like how to explain it . . . ." On the second occasion, Henderson "expos[ed] his genitals." The door was open and Henderson was standing "[i]n the doorway." J.B. testified that she did not know whether Henderson knew she saw and Henderson had never spoken to her about the incident.

### III.    Analysis of Evidence Sufficiency

The State is required to prove that when Henderson exposed himself, he knew of the presence of the child; Henderson argues that the evidence is legally insufficient. What the accused knew often must be proven by inferences from the conduct and circumstances surrounding the acts committed by the accused. *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. [Panel Op.] 1980). Of course, in analyzing the sufficiency of evidence, we view it in the light most favorable to the verdict. *Id.* at 930. Many similar cases refer to evidence of the accused drawing attention to himself; that type of evidence might be highly persuasive that the defendant knew of the child's presence, but it is not essential to prove that fact. *Id.*

Henderson forcefully argues that R.A.'s testimony proves that Henderson did not know of the child's presence. When asked by defense counsel if she could testify that Henderson knew

---

[1] Henderson argues J.B.'s testimony is not credible because J.B. testified at trial she was playing basketball, but she had previously given a statement in which she claimed to have been sitting by the front door of her apartment. J.B.'s credibility was determined by the jury.

5

her daughter was present, she replied, "He knew she was present, he knew that she had -- . . . [he] knew the whole time. From the moment that I got home to the moment that I went out for those hangers he saw me with my daughter, he saw that I kept going after her when she would get out of the truck."

When asked if she could testify "for certain" that Henderson knew of the child's presence, she replied that she did not know "for certain." We view this testimony as R.A.'s attempt to express her belief that even though she could not absolutely know the state of mind of Henderson, from all the facts and circumstances she believed that he was aware of the child's presence. The issue is whether the evidence is sufficient to allow a reasonable jury to infer that Henderson knew of the child's presence.

Several other cases have dealt with similar situations. In *Piazza v. State*, No. 05-98-00299-CR, 1999 Tex. App. LEXIS 3861 (Tex. App.—Dallas May 24, 1999, no pet.) (not designated for publication),[2] the child testified he was playing in his front yard (which was forty yards from the defendant) when he saw a naked man touching his private parts while sitting near a window in a house across the street. The evidence showed the defendant had an unobstructed view of the front yard where the child was located. The evidence was found legally sufficient to support a finding that the defendant knew the child was present.

In *Cantrell v. State*, No. B14-92-00809-CR, 1994 Tex. App. LEXIS 838 (Tex. App.— Houston [14th Dist.] Apr. 14, 1994, no pet.) (not designated for publication), children were

---

[2]Although unpublished opinions by the courts of appeals have no precedential value, they may be cited with the notation "(not designated for publication)." TEX. R. APP. P. 47.7. A reviewing court may take guidance from unpublished opinions "as an aid in developing reasoning that may be employed . . . be it similar or different." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

playing in the streets of the neighborhood where Cantrell had lived for a month. As Cantrell was walking down the street while his genitals were exposed, a child observed him. Cantrell claimed there was no evidence that he knew of the presence of children. The Houston court found it was logical for the jury to infer that Cantrell was aware of the playing habits of the children and "knew that children would be outside on a sunny, Sunday afternoon." *Id.* at *5. There was evidence that children were noisy and, therefore, the jury could infer he heard the children playing outside even if he did not see them. The evidence that Cantrell knew of the presence of the child was sufficient.[3]

Here, the evidence showed that Henderson was conversing with Dearman outside the apartment unit while R.A. and her child were there. Dearman specifically noted the child waved and acknowledged her during that time. Henderson then went upstairs to the apartment directly above R.A.'s apartment. Photographs were introduced from the apartment door looking onto the area where the child was standing, a relatively short distance. From that location, Henderson was clearly in view while standing at the apartment door with the door open. After R.A. screamed, Henderson came down and said, "Y'all didn't see anything."

---

[3]Other similar cases are *Casper v. State*, 634 S.W.2d 39 (Tex. App.—Tyler 1982, no pet.) (standing in front of open window and exposing genitals in open view of child playing outside found as sufficient evidence from which knowledge and intent could be inferred), and *Vann v. State*, No. 05-10-00451-CR, 2011 Tex. App. LEXIS 3417, *4 (Tex. App.—Dallas, May 6, 2011, no pet.) (not designated for publication) (Vann knew child lived across street, mother testified she and child had been outside when Vann walked around naked, mother testified he "knew we were outside," child saw him naked through window, and jury could have inferred Vann could see child).

Based on this evidence, a reasonable jury could infer that Henderson exposed his genitals knowing that a child was present. [4] The evidence is sufficient for a reasonable jury to conclude, beyond a reasonable doubt, that Henderson was guilty of indecency with a child.

## IV.    The Extraneous Offense Evidence

In his second issue, Henderson argues the trial court erred in admitting the extraneous offense and bad act[5] testified to by J.B. Henderson responds that intent was never placed in issue and, alternatively, argues the prejudicial value of the extraneous offense substantially outweighed any probative value. The State argues the incident was admissible to prove intent.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion so long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). An appellate court may not substitute its own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rule 404(b) of the Texas Rules of Evidence provides, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, evidence of "other crimes, wrongs or acts" may be admissible if it has relevance apart from its tendency "to prove the character of a person in order

[4]No argument is presented that he did not expose his genitals with intent to arouse or gratify sexual desire.

[5]Although no exposure of Henderson's genitals occurred during the first incident testified to by J.B., the act nevertheless was a bad act.

to show action in conformity therewith." *Id.* The permissible "purposes" to which evidence of "crimes, wrongs or acts" may be put include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Extraneous offense evidence that logically serves any of these purposes is "relevant" beyond its tendency "to prove the character of a person in order to show action in conformity therewith" provided its probative value substantially outweighs the danger of unfair prejudice. TEX. R. EVID. 403, 404(b).

An accused must be tried only for the offense with which he is charged. He may not be tried for a collateral crime or for being a criminal generally. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). The Texas Court of Criminal Appeals has stated,

> Generally, evidence of extraneous offenses may not be used against the accused in a criminal trial. While such evidence will almost always have probative value, it forces the defendant to defend himself against uncharged crimes as well as the charged offense, and encourages the jury to convict a defendant based upon his bad character, rather than proof of the specific crime charged.

*Daggett v. State*, 187 S.W.3d 444, 450–51 (Tex. Crim. App. 2005) (footnotes omitted). "Rule 404(b) sets out an illustrative, not exhaustive, list of exceptions to the prohibition against admitting evidence of extraneous offenses including 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.* at 451 n.13 (citing TEX. R. EVID. 404(b)).

Extraneous offense evidence is admissible only if the evidence satisfies a two-pronged test: (1) the extraneous offense evidence must be relevant to a fact of consequence in the case aside from its tendency to show action in conformity with character, and (2) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *Page v.*

9

*State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). Unfair prejudice does not arise from the mere fact that evidence injures a party's case. Unfair prejudice may result from the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant. *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007).

Evidence is admissible under the first prong if it is relevant to a "fact of consequence" other than character conformity and remains free of any other constitutional or statutory prohibitions. *Smith v. State*, 314 S.W.3d 576, 591 (Tex. App.—Texarkana 2010, no pet.); *see Segundo v. State*, 270 S.W.3d 79, 88 n.19 (Tex. Crim. App. 2008). Henderson correctly argues the issue of whether Henderson acted with intent to arouse or gratify the sexual desire of any person was never disputed and the extraneous offense evidence was not admissible to prove intent to arouse. *See Jackson v. State*, 320 S.W.3d 873, 885 (Tex. App.—Texarkana 2010, pet. ref'd) (when State's evidence is uncontradicted, extraneous offense evidence not relevant).

We disagree, though, with Henderson's argument that the extraneous offense evidence was not admissible. Extraneous offense evidence is admissible to "rebut a defensive issue that negates one of the elements of the offense." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The extraneous offense evidence was admissible to prove the sole disputed issue at trial—knowledge that a child was present.

Henderson's sole defense at trial was that he lacked knowledge of the child's presence. The extraneous offense and bad act evidence was relevant to prove Henderson's knowledge of the child's presence. *See Bass v. State*, 270 S.W.3d 557 (Tex. Crim. App 2008) (extraneous offenses of sexual assault admissible to rebut defensive theory of fabrication and that defendant,

10

a pastor, would not engage in such conduct); *Richardson v. State*, 328 S.W.3d 61 (Tex. App.—Fort Worth 2010, pet. ref'd) (extraneous offense evidence of "dumpster diving"—searching trash cans to obtain identifying material—was admissible in trial for fraudulent use or possession of identifying information to rebut defensive theory that Richardson had no knowledge of identifying information).   Here, it is at least subject to reasonable disagreement that the extraneous evidence testimony by J.B. made less probable Henderson's defensive theory that he did not know of the child's presence.   Therefore, the trial court did not abuse its discretion in admitting the evidence.[6]

In the second step of our analysis, we must determine whether the probative value of the offense is substantially outweighed by the danger of unfair prejudice.   *See* TEX. R. EVID. 403. Our analysis is guided by the following factors, known as the *Montgomery* factors:   (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable, (2) the potential the extraneous offense evidence has to impress the jury "in some irrational but nevertheless indelible way," (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense, and (4) the force of the proponent's need for this evidence to prove a fact of consequence, that is, does the proponent have other probative evidence available to him to help establish this fact, and

---

[6]The evidence might also be admissible under the "doctrine of chances" theory.  "The 'doctrine of chances' tells us that highly unusual events are unlikely to repeat themselves inadvertently or by happenstance."  *De La Paz*, 279 S.W.3d at 347.  The event in this case—that a child would inadvertently be present while Henderson masturbates in a doorway—is something that is unlikely to occur by happenstance.  Under the "doctrine of chances," evidence of such a highly unlikely event being repeated suggests that Henderson knew the child was present.  We emphasize this doctrine is available only in repeated instances of the same or very similar "highly unusual events."  *Segundo*, 270 S.W.3d at 88.

is this fact related to an issue in dispute. *Montgomery*, 810 S.W.2d at 389–90; *see De La Paz*, 279 S.W.3d at 349; *Jackson*, 320 S.W.3d at 885.

The first factor weighs slightly in favor of the admission of the extraneous offense. Although there are naturally differences between the incidents, J.B.'s testimony allows a jury to infer a lack of mistake when an unlikely event is repeated. While the extraneous offense evidence is not overwhelming evidence of Henderson's knowledge of the child's presence, it is some evidence of this vital fact. Thus, the evidence is significant in aiding the jury to determine a fact of consequence.

We next consider whether the extraneous offense evidence had the potential to improperly influence the jury. Rule 403 does not exclude all prejudicial evidence, but only evidence where the probative value is substantially outweighed by the danger of unfair prejudice. The extraneous offense evidence informed the jury that Henderson had acted inappropriately in the past which, if not offered for a proper purpose, could have the potential to impress the jury in some irrational but indelible way. Here, the jury was instructed it could consider the evidence only in connection with "lack of mistake or accident as to the defendant." Since we have found this evidence was admissible and the jury instruction limited its use, we cannot find this evidence influenced the jury in an improper manner.

The time needed to develop the evidence was inconsequential. The transcript of J.B.'s testimony consists of approximately twelve pages. This minor foray into an extraneous offense would not have significantly distracted the jury from the main issue of whether Henderson committed the crime charged.

12

The need for this evidence also weighs heavily in favor of its admission to prove knowledge. Whether Henderson knew the child was present was the sole significant dispute at trial. By its very nature, proof of another's knowledge of a particular fact is difficult; the use of circumstantial evidence was certainly not conclusive in proving Henderson knew the child was present. The State had significant need for this evidence to prove a fact of consequence.

Because the decision is within the zone of reasonable disagreement, the trial court did not abuse its discretion in admitting the extraneous offense evidence. Henderson's second issue is overruled.

For the reasons stated, we affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:     April 5, 2013
Date Decided:       April 10, 2013

Do Not Publish