**Affirmed and Opinion filed February 26, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00888-CR
_____

**JARMONE TYRIC ADAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 1272904**

## O P I N I O N

Appellant Jarmone Tyric Adams appeals from his conviction for aggravated robbery. A jury found appellant guilty, and the trial court assessed his punishment at 35 years in prison. In a single issue on appeal, appellant contends that the trial court erred in denying his motion to suppress the identification of him by the complainant due to an impermissibly suggestive pre-trial lineup. We affirm.

*Background*

Appellant was charged with committing the aggravated robbery of Freddia Thompson on or about July 21, 2010, using or exhibiting a firearm. Appellant filed a pre-trial motion to suppress any identification of him due to police officers having used an allegedly impermissibly suggestive pre-trial lineup. Thompson identified appellant as the person who robbed her when she was shown a video lineup by a police officer, and she subsequently identified appellant again at trial.

At a pre-trial suppression hearing, Thompson testified that she was robbed on July 22, 2010 while working at a Family Dollar store. She identified appellant in the courtroom as the man who had robbed her on that date. She stated that appellant was over 5'7" tall and, on the day of the robbery, he was wearing blue jeans, a long white t-shirt, a tan hat, and white sunglasses, which were "big . . . like women's sunglasses." She also stated that he had "like a piece of tissue paper" covering a portion of the left side of his face. She was able to observe him for three to four minutes and noticed he had certain distinctive facial characteristics, such as a slightly pointed chin and a tattoo on the right side of his face.

Thompson explained that, on the day of the robbery, a different man, whom Thompson was also able to describe in some detail, came into the store wearing a tan hat and sunglasses, looked around as if he were going to buy something, and then asked about a job. Five to ten minutes after that man left, appellant entered the store and asked her where the rubbing alcohol was kept. While she was looking at appellant because she had just seen the same hat and glasses on another man, he repeated his question. She directed him to the back of the store, and a short time later another store employee came to the front with appellant to show him where another product was located.

Appellant then told the other employee not to move and directed Thompson

2

to get up and open the safe. She told him that it was on a 15 to 20 minute delay and would not open until such time had passed. He then told her to give him everything in the register and threatened that he would "hurt her. I'll take you out." Thompson directed the other employee to give appellant everything in the register. As the other employee did as instructed, appellant was standing directly in front of Thompson about two to three feet away. He told her he had a gun and lifted it up to show her. After appellant left, Thompson gave a description of the robber to a police officer, including that he had a teardrop tattoo under his right eye.

On August 2, 2010, Officer J.P. Varela of the Houston Police Department read Thompson certain admonishments and then showed her a video lineup. She said that as soon as the video began, when it just showed several men walking into the frame, she pointed appellant out, saying "that's the guy right there." Varela told her to wait until all of the men were lined up in the video and stepped forward one at a time. She continued to watch as each man came forward in turn, and she again recognized appellant. She further stated that she recognized him from the day of the robbery, emphasizing, "He is instilled in my brain." There were six men in the video, and appellant was in the second position from the left. On cross-examination, Thompson agreed that the other men in the video really did not look like appellant. She declined to say, though, whether appellant was the only one with a facial tattoo.

HPD Officer Daniel Costin also testified at the hearing. He stated that he helped create the video lineup that included appellant. He said that he chose five "fill-ins" based on similarity to appellant in such physical characteristics as race, height, weight, age, and complexion. Appellant was permitted to choose his own position in the lineup, and he chose position two. Costin stated that the lineup was

conducted in accordance with standard department procedures. On cross-examination, he agreed appellant's teardrop tattoo was a "unique" physical feature, one of the other people in the lineup was taller than appellant, one was at least twelve years younger, another was at least seven years younger, and another had a "slightly different build." Costin additionally noted that the same lineup had been shown to a witness in a separate robbery investigation but that witness was not able to identify anyone in the lineup as the perpetrator.

Officer Varela agreed in his testimony that the lineup was done in accordance with HPD guidelines. Varela subsequently showed the video to complainant Thompson after giving her the standard video lineup admonishments, including that she was not obligated to pick anyone in the lineup as the perpetrator. He said that as soon as the men in the lineup began to walk into the frame, Thompson "immediately without hesitation" pointed to appellant and said that he was the man who had robbed her. Varela told Thompson to watch the entire video and look at all of the people in the lineup before making her decision. Toward the end of the video, Thompson again identified appellant as the perpetrator. Varella said that she seemed positive in her identification and told him she recognized appellant's face.

The video lineup was played for the judge during the hearing. In the video, six men are shown lining up against a white background that had lines indicating height on it. The men are seen together in the frame and then each is shown individually from several angles. The other people in the lineup besides appellant clearly shared many characteristics with him, including height, hairstyles, build, clothing, facial features, and skin coloring. Several appear to have facial markings or blemishes. One is clearly taller than appellant, and one is clearly shorter than appellant; the other three are of very similar heights.

4

The trial court denied the motion to suppress and also denied appellant's trial objection to admission of the video lineup. The jury found appellant guilty, and the trial court assessed punishment at 35 years in prison.

*Standards of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). The trial judge is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We afford almost total deference to the trial court's express or implied determination of historical facts, while reviewing the court's application of the law to the facts de novo. *Wiede*, 214 S.W.3d at 25. We will sustain the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 85, 857 (Tex. Crim. App. 2003).

We utilize a two-step analysis to determine the admissibility of an in-court identification when a defendant contends that suggestive pretrial identification procedures tainted the in-court identification. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); *Santos v. State*, 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). First, we determine if the pretrial identification procedure was impermissibly suggestive. *Loserth*, 963 S.W.2d at 772; *Santos*, 116 S.W.3d at 451. Second, if we conclude that the procedure was impermissibly suggestive, we then determine if the impermissibly suggestive nature of the pre-trial lineup gave rise to a substantial likelihood of irreparable misidentification. *Loserth*, 963 S.W.2d at 772; *Santos*, 116 S.W.3d at 451. If the

5

totality of the circumstances indicates a substantial likelihood of irreparable misidentification exists, admission of the identification of the defendant amounts to a denial of due process. *See Neil v. Biggers*, 409 U.S. 188, 198 (1972). On the other hand, if the pretrial procedure is found to be impermissibly suggestive, identification testimony would nevertheless be admissible where the totality of the circumstances shows no substantial likelihood of misidentification. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).

*Analysis*

Presuming for the sake of analysis that the pretrial identification procedures used in this case were impermissibly suggestive, appellant has failed to show by clear and convincing evidence that these procedures gave rise to a substantial likelihood of irreparable in-court misidentification. The factors we consider when determining whether there is a substantial likelihood of misidentification include: (1) the witness's opportunity to view the perpetrator at the time of the offense, (2) the witness's degree of attention during the offense, (3) the accuracy of the witness's prior description of the perpetrator, (4) the witness's level of certainty regarding her identification at the time of confrontation; and (5) the lapse of time between the offense and the subsequent confrontation. *See Santos*, 116 S.W.3d at 453 (citing *Ibarra*, 11 S.W.3d at 195). We consider these issues of historical fact in the light most favorable to the trial court's ruling, then weigh them de novo against the "corrupting effect" of the suggestive pretrial identification procedure. *Id.* at 453–54 (citing *Ibarra*, 11 S.W.3d at 195–96).

Here, complainant Thompson testified in detail regarding the several minutes in which she was able to observe the suspect at very close range. Her attention was clearly drawn to the suspect during that time, at first because he was wearing the same hat and glasses as someone who had been in the store only

6

moments before and thereafter because he was threatening her, ordering her around, and exhibiting a weapon. Thompson's prior description of the suspect to police, including that he had a teardrop facial tattoo and was of a certain height, appears to have accurately described appellant's features. Additionally, upon viewing the lineup, Thompson immediately, consistently, and positively identified appellant as the person who had robbed her. The time gap between the robbery and Thompson's viewing of the lineup was only 11 days. Based on these facts, even if the video lineup were impermissibly suggestive, the totality of the circumstances shows no substantial likelihood of misidentification occurred. *See Ibarra*, 11 S.W.3d at 195; *Santos*, 116 S.W.3d at 453-54. We overrule appellant's sole issue.

We affirm the trial court's judgment.

/s/     Martha Hill Jamison
        Justice

Panel consists of Justices Frost, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).