**Affirmed and Opinion filed February 23, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00168-CR

**ANDRE JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1601749**

## OPINION

Appellant Andre Jackson appeals his conviction for aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2). He argues (1) the trial court abused its discretion by admitting evidence unlawfully seized from his locked vehicle; (2) his trial counsel was ineffective because he failed to challenge a venire member for cause after the venire member admitted he could not disregard illegally obtained evidence; and (3) the trial court abused its discretion by admitting surveillance videos that were not properly authenticated. We affirm.

BACKGROUND

Appellant was indicted for aggravated robbery with a deadly weapon and a jury trial was held in January and February 2019. At trial, K. Baney, asset protection manager for EZ Pawn pawnshops, testified she was informed of a robbery in progress at the EZ pawnshop on Mykawa Road in Houston on July 22, 2016. She "logged into the DVR immediately, as [she] already had the DVRs for the company up" to access the Mykawa pawnshop's surveillance videos. Baney testified as to what she viewed on the surveillance videos and the State also played the videos for the jury.

The videos showed that, at approximately 9:35 a.m., a blue sedan pulled into a Fiesta store parking lot that was some distance away from the pawnshop. About one minute later, a red SUV pulled into the same parking lot and parked a few spots away from the blue sedan. A man, identified as Appellant, exited the SUV and walked to the blue sedan to talk to the occupants. Shortly thereafter, Appellant and a woman, identified as Megan Lecour, walked across the parking lot, entering the pawnshop at 9:38 a.m. They spent over an hour there, which Baney thought was unusual because most customers typically spend 15 minutes in the shop.

About 25 minutes before the robbery, the blue sedan left its original parking spot and parked close to the pawnshop entrance. Shortly before the robbery, both Appellant and Lecour can be seen on their phones. Two gunmen got out of the blue sedan and entered the pawnshop around 10:50 a.m., and Appellant and Lecour quickly exited the pawnshop. Lecour got into the blue sedan and drove away. Appellant got into the red SUV. After robbing the pawnshop, the gunmen left the store (one of them carrying a black garbage bag) at 10:57 a.m. and ran towards the Fiesta parking lot. The red SUV driven by Appellant stopped for the gunmen, who then entered the SUV, and all drove off. The gunmen stole jewelry worth over

$20,000 and cash.

Baney testified the stolen jewelry contained GPS tracking devices, and she was notified of the tracking devices' location via her cell phone after the robbery. Baney provided the location tracking information to the police and proceeded to the location. When she arrived at the location based on the jewelry tracking information, she saw the red SUV, the blue sedan, and several police officers who had already arrived. Inside the red SUV, Baney observed a trash bag, clothes, cash, and a firearm. Baney got her laptop from her car, accessed the pawnshop's surveillance videos remotely, and relayed the surveillance footage to the police officers on the scene. After the police opened the SUV and the black trash bag, Baney "could see the collateral envelopes with [the] store number on it" and identified the stolen inventory jewelry as well as jewelry from the store's display cases.

Several police officers who had answered a robbery in progress call at the Mykawa EZ pawnshop that morning also testified at trial. Officer Marin testified that after he received the initial call, he was informed a red Expedition SUV fled the scene. Officer Marin was then redirected to an address on Kingsbury Street. As he approached Kingsbury Street, he saw a red Expedition turn onto Kingsbury and pull into a driveway at 5234 Kingsbury. He saw Appellant and a woman exit the SUV quickly. When they saw police, they ran away—the woman ran into the house, and Appellant ran around the house, jumping over the rear fence. Officer Marin tried to cut Appellant off, but other police officers who had arrived at the scene caught Appellant and placed him in the back of a police car. Police officers also detained the two gunmen and the woman.

Officer Marin looked inside the red SUV parked in the driveway. He saw clothes and a black trash bag on the backseat as well as weapons and money on the

rear floor board. He retrieved the keys and unlocked the SUV. Officer Marin and other officers searched the car and recovered clothing, two loaded weapons, money, and the stolen jewelry from the EZ Pawn pawnshop. After Appellant was arrested, he admitted in a video-recorded interview to knowing about the planned robbery of the EZ Pawn pawnshop and that he waited at the scene to drive the gunmen away. DNA linked Appellant and the two gunmen to clothing items recovered in the SUV.

The jury convicted Appellant of aggravated robbery with a deadly weapon, and the trial court sentenced him to 28 years' confinement. Appellant filed a timely appeal.

## ANALYSIS

## I.     Motion to Suppress

Appellant argues in his first issue that the trial court abused its discretion by admitting the evidence seized from his SUV after overruling his motion to suppress. Appellant contends (1) "[t]he automobile exception to the Fourth Amendment does not permit a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein"; and (2) "the exigent circumstances exception to the warrant requirement do[es] not permit the warrantless search of a locked vehicle parked on the curtilage of a home where there is no imminent risk of death or serious injury, or danger that evidence will be immediately destroyed, or that a suspect will escape."

### A.     Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019); *Vasquez v. State*, 324 S.W.3d 912, 918 (Tex. App.—Houston [14th

4

Dist.] 2010, pet ref'd). We afford almost total deference to a trial court's determination of historical facts. *Ruiz*, 577 S.W.3d at 545. In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Aviles-Barroso v. State*, 477 S.W.3d 363, 380 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The trial court is entitled to believe or disbelieve all or part of a witness's testimony, even if that testimony is uncontroverted, because the trial court has the opportunity to observe the witness's demeanor and appearance. *Valtierra*, 310 S.W.3d at 447; *Aviles-Barroso*, 477 S.W.3d at 380.

If the trial court makes express findings of fact, we view the evidence in the light most favorable to its ruling and determine whether the evidence supports those factual findings. *Valtierra*, 310 S.W.3d at 447; *State v. Smith*, 335 S.W.3d 706, 714 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). If the trial court does not enter findings of fact, we must view the evidence in the light most favorable to the trial court's ruling and assume it made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Valtierra*, 310 S.W.3d at 447.

We review a trial court's application of the law to the facts *de novo*. *Ruiz*, 577 S.W.3d at 545; *Aviles-Barroso*, 477 S.W.3d at 380; *see also Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Ruiz*, 577 S.W.3d at 545; *Adams v. State*, 397 S.W.3d 760, 763 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

**B.    Suppression Hearing**

At the motion to suppress hearing, Officer Marin testified that he answered a

5

dispatch for a robbery in progress at the EZ Pawn pawnshop in the morning of July 22, 2016. He testified that dispatch informed him "the subject had fled the scene in a red Expedition" and redirected him to an address on Kingsbury Street. As Officer Marin approached Kingsbury Street, he saw a red Expedition turn onto Kingsbury. He made a U-turn and observed the red Expedition pull into the driveway of a house on Kingsbury. Officer Marin saw Appellant getting out of the driver's seat and a woman getting out of the passenger seat. Appellant "started walking real fast around the backside of the house. And then he fled over the fence." Officer Marin and his partner "went down the street to try to circle back around to see if [they] could cut him off" with their police car. As Officer Marin pursued Appellant, other police officers who had arrived at the scene caught Appellant and placed him in the back of a police car. Police officers also detained the two gunmen and the woman.

Officer Marin testified he returned to the scene, saw Appellant sitting in a police car, and identified Appellant as the man he saw exit the red Expedition and flee. He then looked inside the red Expedition that Appellant had parked in the driveway to look for evidence and weapons. Officer Marin testified he saw clothes and a black trash bag on the backseat as well as weapons and money on the rear floor board. He testified that once he saw what was in the car and was "told by the command center that the trackers are going off in that [trash] bag," he called the District Attorney's Office to ask if he could retrieve the keys from Appellant since Appellant had refused access to the SUV. He was advised to retrieve the keys and remove the property from the SUV. Officer Marin then searched the vehicle and recovered clothing, two loaded weapons, money, and the trash bag containing stolen jewelry with the tracking devices from the pawnshop.

Officer Marin testified that it was important to search the SUV quickly so he

6

could locate the stolen property and the weapons to ensure police had detained the correct suspects. He explained that if the police detained the wrong suspects, the armed pawnshop robbers would still be at large and pose a threat to the community. He testified, "I wasn't sure that those were all the suspects. I had to make sure those were the guns and everything else that they used in the robbery to make sure we had the right suspects."

No other witnesses testified at the suppression hearing. Appellant sought to suppress evidence recovered from the SUV and argued that police unlawfully entered the home's curtilage and searched his SUV when they entered the driveway and looked through the windows of his vehicle for evidence. The State argued that the court did not need to decide whether the driveway was a curtilage because Appellant lacked standing to complain about the police entering a driveway in which he showed no privacy interest.

With regard to standing, Appellant responded that (1) the SUV belonged to him; (2) the driveway was a part of the home's curtilage because it was semi-private and separated from the neighbor's property by a fence on one side; and (3) he need not have a property interest in the home to assert a Fourth Amendment claim regarding his vehicle. He asserted that the police looking through his SUV's windows while it was parked in the driveway constituted an unlawful search. Appellant further argued that the subsequent unlocking and search of his vehicle was unlawful because the automobile exception to the warrant requirement did not apply absent exigent circumstances and there was no exigency once police had arrested him and taken his car keys.

The State countered that (1) police looking through his car windows did not violate the Fourth Amendment because Appellant failed to establish he had a privacy interest in the home's driveway and thus standing; and (2) even if

7

Appellant established he had standing, he failed to show the driveway constituted part of the home's curtilage. The State also contended that the automobile exception to the warrant requirement requires no exigency and applies in this case; even if the automobile exception required exigent circumstances, such circumstances existed in this case because the police had to make sure they had the correct suspects in custody for the safety of the community.

## C. Standing

On appeal, as in the trial court, Appellant challenges two allegedly unlawful searches and correspondingly makes two separate arguments. First, he claims Officer Marin looking through his SUV's windows constitutes an unlawful search because the driveway in which his vehicle was parked qualifies as the home's curtilage. Second, Appellant contends that the opening of his SUV and subsequent search thereof was unlawful because no exigent circumstances existed to permit police to search his locked vehicle. We begin by addressing Appellant's first argument.

Because Appellant's argument focuses on whether the driveway in which his SUV was parked qualifies as the home's curtilage, the issue before us is not Appellant's expectation of privacy in his SUV. Instead, the issue is whether Appellant met his burden to establish he had a reasonable expectation of privacy in the home and, thus, standing to complain about the intrusion upon the home's curtilage. The State contends Appellant lacks Fourth Amendment standing because he did not show any ownership or possessory interest in the home.

The purpose of the Fourth Amendment to the United States Constitution is to safeguard a person's legitimate expectation of privacy from unreasonable government intrusions. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). "Proof of a 'reasonable expectation of privacy' is at the forefront of all

8

Fourth Amendment claims." *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). A defendant has no standing to complain about the invasion of someone else's personal rights. *Id*. The rights protected by the Fourth Amendment are personal. *Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014). Therefore, a defendant must show that the search violated his, rather than a third party's, legitimate expectation of privacy. *Id*. To carry his burden of proof and demonstrate a legitimate expectation of privacy, a defendant must show that (1) "by his conduct, he exhibited an actual subjective expectation of privacy, *i.e.*, a genuine intention to preserve something as private;" and (2) "circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable." *Villarreal*, 935 S.W.2d at 138; *see also Matthews*, 431 S.W.3d at 606.

In determining whether a person's expectation of privacy is reasonable, we must examine the totality of circumstances surrounding the search and consider a non-exhaustive list of factors, including whether (1) the defendant had a property or possessory interest in the place invaded; (2) he was legitimately in the place invaded; (3) he had complete dominion or control and the right to exclude others; (4) before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) he put the place to some private use; and (6) his claim of privacy is consistent with historical notions of privacy. *Matthews*, 431 S.W.3d at 607; *Villarreal*, 935 S.W.2d at 138. Although we defer to the trial court's factual findings, we review the legal issue of standing *de novo*. *Matthews*, 431 S.W.3d at 607; *State v. Betts*, 397 S.W.3d 198, 204 (Tex. Crim. App. 2013).

Appellant makes no argument regarding any of the six factors listed above. Additionally, our review of the evidence presented at the suppression hearing (and at trial) does not show that Appellant had a property or possessory interest in the

house and therefore had no such interest in the driveway of the house. *See Matthews*, 431 S.W.3d at 607. There is also no evidence that Appellant was legitimately in the driveway; he presented no evidence that he was at least a welcome overnight guest of the person in whose driveway he parked his SUV or that he at a minimum had permission to park there. *See Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (holding overnight guests have legitimate expectation of privacy in their host's home). Additionally, Appellant presented no evidence that he had unrestricted access to the house and driveway, dominion or control over the house and driveway, or the right to exclude others from the house and driveway. *See Matthews*, 431 S.W.3d at 607. Similarly, there is no evidence Appellant took any precautions to ensure the privacy of his SUV; he did not place a cover over the vehicle or place anything in its path to obscure it from plain view. *See Mohammed v. State*, No. 02-15-00127-CR, 2016 WL 3659113, at *6 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op., not designated for publication).

The State does not dispute that Appellant had a reasonable expectation of privacy in his vehicle; however, that does not by itself entitle him to an expectation of privacy in the house and the adjacent driveway where he parked his vehicle. *See id*. at *6-7. Appellant has to articulate and prove the basis for a reasonable expectation of privacy. *See id*. In this case, Appellant failed to meet his burden to show he had a reasonable expectation of privacy in the house and driveway to correspondingly establish standing to contest the government's entry onto the driveway to look through the windows of his parked SUV.

After examining the evidence in the record, we hold Appellant did not prove he has standing to contest the government's entry onto the driveway of the house. Therefore, the trial court did not err in denying Appellant's motion to suppress.

**D.      Warrantless Search**

10

We next turn to Appellant's argument that the police conducted an unlawful search of his SUV because "the exigent circumstances exception to the warrant requirement do[es] not permit the warrantless search of a locked vehicle parked on the curtilage of a home where there is no imminent risk of death or serious injury, or danger that evidence will be immediately destroyed, or that a suspect will escape."

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). Evidence seized by the police without a warrant may be admitted only if an exception to the Fourth Amendment's warrant requirement applies. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008). A defendant challenging the admission of evidence on the basis of the Fourth Amendment bears the initial burden to prove that the search occurred without a warrant. *Id*. If the defendant meets his burden, the burden shifts to the State to prove that an exception applies. *Id*.

One such exception is the automobile exception; it provides that law enforcement officers may lawfully conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe the vehicle contains evidence of a crime. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009); *Neal*, 256 S.W.3d at 282; *see also Wiede*, 214 S.W.3d at 24. The justifications for the automobile exception are that vehicles are inherently mobile and the privacy expectation with respect to one's vehicle is significantly less than the privacy expectation in one's home. *See Wiede*, 214 S.W.3d at 24; *see also Keehn*, 279 S.W.3d at 335. Thus, a vehicle may be searched on the basis of probable cause and exigent circumstances are not required. *Neal*, 256 S.W.3d at 283 ("The automobile exception . . . does not require exigent circumstances."); *Dixon v. State*,

11

206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006) ("As the Supreme Court stated, a finding of probable cause 'alone satisfies the automobile exception to the Fourth Amendment warrant requirement.'"); *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998) ("[T]he automobile exception to the Fourth Amendment of the United States Constitution does not require the existence of exigent circumstances in addition to probable cause.").

Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of a police officer on the scene would lead a reasonable person to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019). In determining probable cause, we must consider the totality of the circumstances. *Marcopoulos v. State*, 538 S.W.3d 596, 600 (Tex. Crim. App. 2017); *Wiede*, 214 S.W.3d at 25. The sum of the facts and circumstances known to law enforcement officers at the time of a search is considered in assessing whether there was sufficient probable cause. *Wiede*, 214 S.W.3d at 26; *Curry v. State*, 228 S.W.3d 292, 295 (Tex. App.—Waco 2007, pet. ref'd).

Here, the automobile exception gave law enforcement the right to enter Appellant's red Expedition and lawfully search it. *See Keehn*, 279 S.W.3d at 335-36. The SUV was readily mobile as evidenced by Appellant's use of it just minutes earlier when he fled the scene of the robbery. There was also probable cause to search the SUV. Officer Marin testified that he was informed by dispatch that a red Expedition had fled the robbery scene and that he was then instructed to drive to Kingsbury Street by dispatch. As he approached Kingsbury Street, he observed a red Expedition pull into the driveway of a house on Kingsbury. Officer Marin saw Appellant getting out of the driver's seat of the SUV, "walking real fast around the backside of the house", and then fleeing "over the fence." After

12

Appellant was caught and taken into custody, Officer Marin looked inside the red Expedition that Appellant had parked in the driveway to look for evidence and weapons. He saw clothes and a black trash bag on the backseat as well as weapons and money on the rear floor board. He testified that he was "told by the command center that the trackers are going off in that [trash] bag." Taken together, these facts would have caused a reasonable person to believe that the SUV was Appellant's vehicle and likely contained evidence of the robbery committed at the EZ Pawn pawnshop.

We conclude that the search of Appellant's vehicle was lawful under the automobile exception to the warrant requirement, and we reject Appellant's contention that the warrantless search was unlawful because there were no exigent circumstances at the time of the search when Appellant was already in custody and there was no "danger that evidence will be immediately destroyed."

Further, the court of criminal appeals confirmed that the automobile exception requires that probable cause exist; it does not require exigent circumstances to justify a warrantless search. *See Keehn*, 279 S.W.3d at 335-36 (finding that police under the automobile exception lawfully conducted a warrantless search of defendant's van parked in his driveway because police had probable cause to believe contraband was in the van after observing the contents of the van through the van window; stating that "the 'ready mobility' of a vehicle creates 'an exigency'" and requiring no exigent circumstances).

The search of Appellant's SUV parked in a driveway was lawful under the automobile exception to the warrant requirement, and the trial court did not err in denying Appellant's motion to suppress. Accordingly, we overrule Appellant's first issue.

## II.     Ineffective Assistance of Counsel

Appellant argues in his second issue that his trial counsel was ineffective because she failed to challenge for cause a venire member who admitted he could not disregard illegally obtained evidence.

## A.    Governing Law

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

In order to satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Lopez*, 343 S.W.3d at 142.  A defendant must overcome a strong presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See id*.; *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).  "Before granting relief on a claim that defense counsel failed to do something, we ordinarily require that counsel be afforded the opportunity to outline the reasons for the omission." *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007).

If trial counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will typically defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza*, 213 S.W.3d at 348.  "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Lopez*, 343 S.W.3d at 142-43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)).  Absent a record sufficient to demonstrate that trial counsel's

conduct was not the product of a strategic or tactical decision, we should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696-97 (Tex. Crim. App. 2008) (en banc) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

To satisfy the second prong, an appellant must show that there is a reasonable probability — or a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different but for trial counsel's unprofessional errors. *Lopez*, 343 S.W.3d at 142. In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id*.; *see also Goodspeed*, 187 S.W.3d at 392 ("Direct appeal is usually an inadequate vehicle for raising [an ineffective assistance] claim because the record is generally undeveloped."). Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697.

## B. Voir Dire

During voir dire, venire member 20 ("Juror 20"), who ultimately served on the jury, expressed his concern to the prosecutor that a getaway driver is less culpable than the actual gunman and should therefore not "be charged with the same crime." Juror 20 stated that he was "not sure" if he could find the person who acted as a party "guilty of the same crime of the one that actually committed the offense". He also stated that his grandfather had been beaten and put in a car trunk, "and that left an emotional issue." He could not be completely certain that

experience would not have an effect on him in this case. In response to defense counsel's question whether he could disregard illegally obtained evidence, Juror 20 was one of several venire members who could not assure defense counsel he could disregard illegally evidence "in all cases".

During the bench conference, defense counsel and the prosecutor listed their challenges for cause. The trial court then inquired if "[e]ither side want[ed] to call anyone up." One of Appellant's trial counsels responded, "N[umber] 20, Judge, grandfather was robbed, beaten up and kidnapped", but Appellant's lead counsel stated, "No, I don't want to challenge him." No one discussed Juror 20 any further, and he was seated on the jury.

## C. Counsel's Performance

We first address whether Appellant proved that his trial counsel's performance was deficient for not challenging Juror 20. We conclude Appellant has not carried his burden of proof under the first *Strickland* prong.

The record in this case is devoid of any explanation for why Appellant's trial counsel did not challenge Juror 20. The record contains no motion for new trial based on ineffective assistance, an accompanying hearing, nor any affidavits. Although not clear from his briefing, to the extent Appellant asserts that his trial counsel's performance was deficient because no competent counsel would refuse to challenge a biased juror, the court of criminal appeals has repeatedly rejected that contention. *See, e.g., Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (holding there was no deficient performance on a silent record when counsel did not strike a juror who said his prior experience as a victim of a burglary would probably impact his impartiality in the trial of the defendant for robbery); *Delrio v. State*, 840 S.W.2d 443, 445 (Tex. Crim. App. 1992) (per curiam) (holding no deficient performance on a silent record when counsel did not challenge a juror

16

who was an ex-narcotics officer and admitted during voir dire that he could not be impartial); *see also Morales*, 253 S.W.3d at 698 ("trial counsel must be permitted to make a strategic or tactical decision to retain a juror who is only presumably biased") (emphasis omitted).

Additionally, there is no basis to find that trial counsel's refusal to challenge Juror 20 for cause was not motivated by strategy. Lead counsel's insistence that she did not want to challenge Juror 20 for cause after her co-counsel suggested questioning Juror 20 because his grandfather had been beaten and kidnapped shows a strategic decision on her part to refrain from doing so. Appellant's trial counsel did not neglect or forget to challenge Juror 20; she made a deliberate and conscious decision. Her strategic decision could have been motivated by the juror's statements during voir dire that a getaway driver should not be charged with the same crime as the actual gunmen in a robbery. Regardless, the silent record before us does not show trial counsel's conduct "was so outrageous that no competent attorney would have engaged in it." *See Morales*, 253 S.W.3d at 696-97. We cannot conclude trial counsel's performance was deficient.

Because Appellant failed to prove the first *Strickland* prong, we reject his argument that he was denied effective assistance of counsel. Accordingly, we overrule Appellant's second issue.

### III. Authentication of Surveillance Videos

Appellant argues in his third issue that the trial court abused its discretion "by admitting surveillance videos without proper authentication under Texas Rule of Evidence 901." He claims that Baney, who testified she was the asset protection manager and custodian of records for EZ Pawn pawnshops, "was not a witness with 'personal knowledge who observed the robbery incident'"; and therefore she

could not properly authenticate the surveillance videos of the robbery offered by the State as State's exhibit 4.

The State counters that Appellant failed to preserve any alleged error because he made no objection to authentication before the trial court admitted the surveillance videos. The State also asserts that, "even had appellant preserved his authenticity objection, the State sufficiently authenticated the recordings to support the trial court's ruling on admissibility."

Assuming for the sake of argument that Appellant preserved his complaint for review, there is no error because the trial court acted within its discretion when it allowed admission of the surveillance videos in State's exhibit 4.

## A. Standard of Review and Governing Law

Texas Rule of Evidence 901 governs the authentication requirements for the admissibility of evidence. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901. Among other options, authenticity may be established with evidence of "distinctive characteristics and the like," which include "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id*. 901(b)(4). "Video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to a disputed issue." *Fowler*, 544 S.W.3d at 849.

On appeal, we review a trial court's ruling on authentication issues under an abuse of discretion standard. *Id*. at 848. This deferential standard requires us to

18

uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Id*. A trial court is given considerable latitude with regard to its evidentiary rulings, and different trial courts may "reach different conclusions in different trials on substantially similar facts without abusing their discretion." *Id*. (quoting *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007)).

In a jury trial, it is the jury that ultimately determines whether an item of evidence is what its proponent claims; the trial court need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). Conclusive proof of authenticity before the admission of disputed evidence is not required; Rule 901 only requires some evidence sufficient to support a finding that the evidence at issue is what the proponent claims. *Fowler*, 544 S.W.3d at 848. The standard for admissibility is considered a liberal one. *Id*. at 849.

**B.     Application**

In determining whether the trial court improperly admitted surveillance videos of the EZ Pawn pawnshop robbery contained in State's exhibit 4, we find the court of criminal appeals opinion in *Fowler* instructive.

*Fowler* involved the admission of video evidence that showed the defendant purchasing items that were allegedly used in the theft of an ATV, and the receipt for these items was later found by police near the stolen ATV. *Id*. at 846-47, 848. Police used the receipt to locate the store where the items had been purchased and the store's manager provided police with the relevant video footage by using the date and time on the receipt. *Id*. at 846.

The *Fowler* court explained that "even though the most common way to authenticate a video is through the testimony of a witness with personal knowledge who observed the scene, *that is not the only way*"; evidence can also be authenticated by the "'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" *Id*. at 849 (emphasis in original) (quoting Tex. R. Evid. 901(b)(4)). The court affirmed the trial court's admission of the store video over an authenticity objection based on circumstantial evidence demonstrating: (1) the police officer made an in-person request of the store manager to pull the surveillance video from a certain date and time; (2) the video possessed the distinctive characteristic of having a date and time stamp; (3) the date and time on the video corresponded to the date and time on the receipt that was found within three feet of the stolen ATV; and (4) the video pulled by the store manager showed the defendant at the store on the specific date at the specific time purchasing the items listed on the receipt that was found near the stolen ATV. *Id*. at 849-50.

The court noted that the State could have produced testimony from witnesses who could have further authenticated the videotape, such as the manager of the store who pulled the videotape from the shelf, the employee of the store who was responsible for maintaining the surveillance equipment, or the employee of the store who was working the specific cash register on the exact date and at the exact time on the videotape. *Id*. at 850. Nonetheless, the court held that the trial court's determination — that the police officer supplied sufficient facts to support a reasonable jury determination that the video was authentic — was a decision within the zone of reasonable disagreement. *Id*.

Here, Baney testified that she is a divisional asset protection manager for EZ Pawn pawnshops, and some of her daily duties include risk assessment, robbery

20

response, securing evidence, researching losses, and working with local police. Baney testified that she was notified by a district manager that there was a robbery in progress at the pawnshop on Mykawa Road on July 22, 2016. In response to that notification, Baney immediately logged into the EZ Pawn company DVR and started watching the pawnshop's surveillance videos. Baney explained that the pawnshop had several cameras outside as well as inside the pawnshop. She identified State's exhibit 4 as business records of EZ Pawn. She testified that she is the custodian of records for EZ Pawn, that she kept the Mykawa pawnshop surveillance videos in the regular course of business, and that the videos were made at or near the time the robbery occurred.

Baney explained that the surveillance videos in State's exhibit 4 were made for the purpose of documenting incidents like the robbery. The surveillance videos displayed (1) the specific camera numbers for the various angles inside and outside the pawnshop, (2) the July 22, 2016 date stamp, (3) the beginning time of 8:49 a.m., and (4) the ending time of 11:01 a.m. The videos also showed Appellant and Lecour spending over one hour inside the pawnshop before the robbery as well as the gunmen committing the robbery. Further, the robbery occurred between 10:50 a.m. and 10:57 a.m. at the Mykawa pawnshop on July 22, 2016, which is the date, time, and location displayed on the surveillance videos.

We conclude the State presented sufficient evidence to support a jury determination that the surveillance videos in State's exhibit 4 were authentic. *See Fowler*, 544 S.W.3d at 849-50. The trial court's determination therefore was within the zone of reasonable disagreement, and the trial court did not abuse its discretion in admitting the surveillance videos. Accordingly, we overrule Appellant's third issue.

21

**CONCLUSION**

We affirm the trial court's judgment.

/s/    Meagan Hassan
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

Publish — Tex. R. App. 47.2(b).